BRIAN VOGEL, SBN 167493
brian@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326

Attorney for Plaintiffs Michael Nedelman,
Jill Nedelman, and Plaintiffs C.E.N., B.R.N.
and C.G.N., by and through their guardian
ad litem and mother, Jill Nedelman

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL NEDELMAN, an individual,
and JILL NEDELMAN, an individual,
and C.E.N., B.R.N., and C.G.N. [names
redacted], MINORS, BY AND
THROUGH THEIR GUARDIAN AD
LITEM AND MOTHER, JILL
NEDELMAN,

           Plaintiffs,

    vs.

CITY OF LOS ANGELES, LOS
ANGELES POLICE DEPARTMENT,
CHIEF CHARLIE BECK, an individual,
and DOES 1-10, inclusive.

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **CV 12   1385**

## COMPLAINT FOR DAMAGES

1. Violation of Civil Rights:
   Unlawful Detention
   (42 U.S.C. § 1983/
   4th and 14th Amendment)
2. Violation of Civil Rights: Excessive
   Use of Force (42 U.S.C. § 1983/ 4th
   Amendment)
3. Violation of Civil Rights:
   Unlawful Detention and Arrest
   (42 U.S.C. § 1983/
   4th and 14th Amendment)
4. Violation of Civil Rights:
   Warrantless Entry (42 U.S.C. §
   1983/ 4th and 14th Amendments)
5. Violation of Civil Rights:
   Substantive Due Process Rights
   (42 U.S.C. §1983/ 14th Amendment)
6. *Monell* Claims on the 42 U.S.C. §
   1983 Claims

1



7. California Civil Code § 52.1
8. Negligent Infliction of Emotional Distress
9. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.     This is a complaint for money damages by Plaintiff MICHAEL NEDELMAN, Plaintiff JILL NEDELMAN, and JILL NEDELMAN as guardian ad litem for Plaintiffs C.E.N., a minor, B.R.N., a minor, and C.G.N., a minor, arising under 42 U.S.C. §§ 1983 and 1988, and supplemental state law claims actionable under California Civil Code § 52.1 and California Code of Civil Procedure, § 526a.  Plaintiffs seek redress for deprivation of their rights, privileges and immunities, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

**JURISDICTION AND VENUE**

2.     Subject matter jurisdiction for this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343, as it arises under 42 U.S.C. §1983.

3.     The acts complained of arose in the Central District of California.  Therefore, venue properly lies here pursuant to 28 U.S.C. § 1391.  Venue in this Court is also proper pursuant to 28 U.S.C. §1391(b)(1) in that one or more Defendants resides in or has its principal place of business in the Central District of California.

**PARTIES**

2

4.    Plaintiff MICHAEL NEDELMAN, at all relevant times mentioned herein, was an individual and resident of Woodland Hills, Los Angeles County, California.

5.    Plaintiff JILL NEDELMAN, at all relevant times mentioned herein, was an individual and resident of Woodland Hills, Los Angeles County, California.

6.    Plaintiff C.E.N., at all relevant times mentioned herein, was an individual and resident of Woodland Hills, Los Angeles County, California. She was at all times mentioned herein, and now is, a minor residing with her mother and father, and her interests in this matter are represented by and through her guardian ad litem and mother, JILL NEDELMAN.

7.    Plaintiff B.R.N., at all relevant times mentioned herein, was an individual and resident of Woodland Hills, Los Angeles County, California. He was at all times mentioned herein, and now is, a minor residing with his mother and father, and his interests in this matter are represented by and through his guardian ad litem and mother, JILL NEDELMAN.

8.    Plaintiff C.G.N., at all relevant times mentioned herein, was an individual and resident of Woodland Hills, Los Angeles County, California. He was at all times mentioned herein, and now is, a minor residing with his mother and father, and his interests in this matter are represented by and through his guardian ad litem and mother, JILL NEDELMAN.

9.    At all times material herein, Defendant City of Los Angeles, ("CITY") was a public entity authorized by law to establish certain departments, responsible for enforcing

3

the laws and protecting the welfare of the citizens and public employees of Los Angeles

County.  At all times mentioned herein, Defendant CITY was ultimately responsible for

overseeing the operation, management, and supervision of the Los Angeles Police

Department.  Defendant CITY is liable for the negligent and reckless acts of all of these

aforementioned parties, personnel and entities, as described herein.

10.     At all times material herein, Los Angeles Police Department ("LAPD"), was a

public entity responsible for providing law enforcement and detention services for

Defendant CITY.

11.     At all times mentioned herein, Defendant LAPD was the duly authorized law

enforcement agency in and for the City of Woodland Hills, Los Angeles County,

California, and was responsible for overseeing the operation, management, and

supervision of the employees who patrol in Woodland Hills, California, and is liable for

the negligent and reckless acts of all employees, personnel, and entities, including, but not

limited to, Defendant OFFICER DOES, and their supervisors, SUPERVISORY DOES,

inclusive.

12.     At all times material herein, Defendant POLICE CHIEF CHARLIE BECK,

("BECK"), was Chief of Police for Defendant LAPD, and was responsible for

supervising, operating, and managing LAPD and was further responsible for the policies,

customs, and procedures used at LAPD.

13.     At all times material herein, upon information and belief, same Defendant DOES

were and are natural persons, residing in the Central District of California and acting as

4

duly appointed LAPD officers employed by Defendants CITY and LAPD which are located in the Central District of California, acting at all relevant times within the scope of their employment with CITY and/or LAPD ("OFFICER DOES"). Upon information and belief, Defendant OFFICER DOES were each responsible in some manner for the injuries and damages alleged herein. The true names and identities of Defendant OFFICER DOES are presently unknown to Plaintiff. Upon information and belief, such employees include, *inter alia*, LAPD officers who were involved in any manner in the incidents alleged in this Complaint. Plaintiffs will amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs are informed, believe and based thereon allege that each Defendant OFFICER DOE herein is in some manner responsible for the injuries and damages suffered by Plaintiff MICHAEL NEDELMAN, Plaintiff JILL NEDELMAN, and Plaintiffs C.E.N., B.R.N., and C.G.N.

14.     Upon information and belief, some Defendant DOES were each responsible in some manner for the injuries and damages alleged herein. The true names and identities of these Defendant DOES are presently unknown to Plaintiff and include, but are not limited to, the Watch Commander who was present on the 911 call while OFFICER DOES were on scene. Upon information and belief, at all relevant times herein, these Defendant DOES were employees and/or agents of CITY and/or LAPD, acting at all relevant times within the scope of their employment with CITY and/or LAPD. Upon information and belief, such DOES include, but are not limited to, LAPD supervising employees and/or agents who were involved in any manner in the incidents alleged in this

Complaint ("SUPERVISORY DOES").  Plaintiffs will amend this Complaint to allege

their true names and capacities when they are ascertained.  Plaintiffs are informed,

believe and based thereon allege that each Defendant SUPERVISORY DOE herein is in

some manner responsible for the injuries and damages suffered by  Plaintiff MICHAEL

NEDELMAN, Plaintiff JILL NEDELMAN, and minor Plaintiffs C.E.N., B.R.N., and

C.G.N.

15.    In committing the acts and/or omissions alleged herein, all Defendants acted under

color of authority and/or color of law.

## GENERAL ALLEGATIONS

16.    This action is brought under Title 42 U.S.C. §§1983, 1988, and the Fourth and

Fourteenth Amendments of the United States Constitution and pursuant to the general

laws of the United States.  Plaintiffs also allege supplemental state law claims alleging

violations of California Civil Code § 52.1 as well as negligent infliction of emotional

distress and intentional infliction of emotional distress.  Against individual Defendant

OFFICER DOES, Plaintiffs request punitive damages.

17.    At all times material to the facts alleged herein, Defendants, and each of them,

including Defendant OFFICER DOES, were responsible for the unlawful conduct and

resulting injury by, *inter alia*, personally participating in the conduct, acting jointly and in

concert with others who did so, by authorizing, acquiescing, or failing to take action to

prevent the unlawful conduct, or by covering up the conduct by either failing to document

the conduct reported by witnesses or by writing materially false police reports.  Each said

Defendant was acting in the course and scope of his employment as a police officer and was acting under color of law.

18.     Defendant BECK and all Defendant SUPERVISORY DOES, inclusive, are being sued in their individual capacities, and, at the time of the acts complained of, were each duly appointed and acting officers employed as such by CITY and LAPD.  At the time of the acts hereinafter complained of, each said defendant was acting in the course and scope of such employment and acting under color of law, by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' civil rights, to intervene to stop the unlawful conduct; and by ratifying the conduct that occurred by agents and officers under their direction and control.

19.     At all times relevant to the facts alleged herein, Defendants BECK, CITY, LAPD and SUPERVISORY DOES were at all times responsible for the hiring, training, supervision, and discipline of other defendants, and were responsible for violation of Plaintiffs' rights.

20.     Defendants BECK, CITY, LAPD and SUPERVISORY DOES are collectively referred to herein as "MUNICIPAL DEFENDANTS."

21.     At all times material to the facts alleged herein, each Defendant was individually and jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

22.     Plaintiffs are informed, believe and based thereon allege that, at all times

7

mentioned herein, each of the Defendant OFFICER DOES was the agent and employee of

Defendants CITY and the LAPD and, in doing the things herein mentioned, were acting

within the scope of their authority as such agents and employees and with the permission

and consent of their Co-Defendants.

23.     Plaintiffs are informed, believe and based thereon allege that each Defendant sued

herein was responsible in some manner for the events as hereinafter described, and

proximately caused injuries and damages to Plaintiffs.

### NOTICE TO PUBLIC ENTITIES FOR STATE TORT CLAIMS

24.     Plaintiffs have fully complied with California Government Code §§ 910 *et seq.* by

timely filing claims with Defendants and timely filing this lawsuit thereafter.

### FACTUAL ALLEGATIONS

25.     Plaintiffs MICHAEL and JILL NEDELMAN, lived at 20601 Dumont Street,

Woodland Hills, California with their minor children, including Plaintiffs C.E.N., B.R.N.,

and C.G.N.,  beginning in September 2009 and throughout all relevant times in this

action.

26.     Plaintiffs MICHAEL and JILL NEDELMAN were caring for an adult son named

Brandon who did, and now does, suffer from significant mental disabilities, including

schizophrenia.  Prior to the incidents complained of herein, Plaintiffs MICHAEL

NEDELMAN and JILL NEDELMAN had requested police assistance at their home to aid

them with Brandon's behavior which was caused by his mental disabilities.

27.     In the late afternoon of July 12, 2011, a neighbor who lives two houses down the

8

street from Plaintiffs' residence heard a woman's voice that sounded loud and possibly

distressed, so she called the 911 emergency dispatcher to report it. Plaintiffs are

informed, believe and thereupon allege that the neighbor did not report a specific location

from which the woman's voice originated. Plaintiffs are informed and believe and

thereupon allege that the noise did not originate from their residence.

28.     At approximately 5:15 p.m., Plaintiff MICHAEL NEDELMAN returned home in

his car from a jog. As he was driving down Dumont Street, he noticed a police vehicle

parked two doors down from his home. Plaintiff MICHAEL NEDELMAN parked in his

driveway and then went to the mailbox to get his mail.

29.     While Plaintiff MICHAEL NEDELMAN was at the mailbox, he saw two police

officers, OFFICER DOES, quickly approaching him. One OFFICER DOE addressed him

with a statement similar to, "Hey, you, stop, we want to talk to you." Plaintiff MICHAEL

NEDELMAN stated, "I don't want to talk to you." Both OFFICER DOES then began

running towards Plaintiff MICHAEL NEDELMAN. The shorter of the two OFFICER

DOES then drew his firearm.

30.     After the OFFICER DOE drew his firearm, Plaintiff MICHAEL NEDELMAN

became frightened and ran for his front door. He opened his front door, went inside and

then closed and locked the door. He looked through the window and saw the shorter

OFFICER DOE pointing his firearm toward the house. Plaintiff MICHAEL

NEDELMAN did not see the second OFFICER DOE.

31.     At this time, Plaintiff JILL NEDELMAN was in the house lying on a couch near

9

the door to the backyard. Plaintiff JILL NEDELMAN, who is a cancer patient, was lying on the couch because she was tired from a chemotherapy treatment she had recently received. Plaintiff MICHAEL and JILL NEDELMAN's children, Plaintiff's C.E.N., B.R.N., and C.G.N., were playing in the back yard.

32.     Plaintiff MICHAEL NEDELMAN indicated to Plaintiff JILL NEDELMAN that there were policemen outside and asked her if there was anything going on. Plaintiff JILL NEDELMAN said nothing unusual had happened at the house. Plaintiffs observed that within approximately five minutes of the first interaction between Plaintiff MICHAEL NEDELMAN and the OFFICER DOES, a police helicopter was on the scene flying over Plaintiffs' residence.

33.     Plaintiff MICHAEL NEDELMAN called 911 and told the dispatcher that there were police at the front of his house with guns drawn and a police helicopter flying over his house. He asked what was going on and if someone could please help him. He told the dispatcher that he had no idea why the police were at his house or why they approached him with their weapons drawn. Plaintiff MICHAEL NEDELMAN told the dispatcher his name and then tried to explain that he was a good person and that he was regulated by the government as a mortgage broker. Plaintiff MICHAEL NEDELMAN was frightened by what was occurring.

34.     Plaintiff C.E.N., who had entered the house in the interim, looked out of a window and saw numerous officers, OFFICER DOES, arrive and surround the house.

35.     The 911 dispatcher told Plaintiff MICHAEL NEDELMAN to open the door so

that the police officers could see that everything was okay. The dispatcher told Plaintiff

MICHAEL NEDELMAN that they were in communication with law enforcement at the

scene. At this time, based on the advice from the dispatcher, Plaintiff MICHAEL

NEDELMAN handed Plaintiff JILL NEDELMAN the phone so that he could open the

door.

36.     Plaintiff JILL NEDELMAN was frightened and told Plaintiff MICHAEL

NEDELMAN not to open the door. The dispatcher told Plaintiff JILL NEDELMAN

words to the effect of, "We have the wrong house." The dispatcher also told her that the

police were fully aware that they were at the wrong house and that the Nedelmans should

just open the door so that the police officers could verify the safety of everyone in their

home. Plaintiff JILL NEDELMAN told the dispatcher that everyone in her family was

scared, and that she did not want to open the door until the guns were put away, the cops

backed off, and she knew that her family would be safe.

37.     The dispatcher told Plaintiff JILL NEDELMAN that the Watch Commander was

on the phone. The Watch Commander reassured Plaintiff JILL NEDELMAN that it was

safe to open the door. The Watch Commander told Plaintiff JILL NEDELMAN that they

were aware of the situation that was taking place outside their house, and that all they

wanted to do was verify that everyone inside was safe. He repeated that they had the

wrong house and that the police knew that they had the wrong house. The Watch

Commander told her words to the effect of, "It's all going to be okay, we just want to

know that everyone is safe."

38.     Plaintiffs agreed to go together to the door and that Plaintiff MICHAEL NEDELMAN would open the door, so that officers could see that they were all safe. Plaintiff JILL NEDELMAN stayed on the line with the 911 dispatcher.  Plaintiff MICHAEL NEDELMAN opened the door with his family lined up behind him.  When he opened the door, a OFFICER DOE was six to seven feet in front of the house.  Neither Plaintiff MICHAEL NEDELMAN nor anyone else in the family had anything in their hands.

39.     Six or seven OFFICER DOES moved rapidly forward.  Plaintiff MICHAEL NEDELMAN stepped back a couple of paces into the entry way.  Two or three OFFICER DOES entered the home and additional officers quickly followed them inside.  One OFFICER DOE told Plaintiff MICHAEL NEDELMAN to step outside.     Plaintiff MICHAEL NEDELMAN refused, stating that he did not want to do so and he informed the OFFICER DOE that 911 Dispatch had reassured him that everything would be okay if Plaintiffs opened the door.

40.     The same OFFICER DOE responded words to the effect of, "No, I want you to step outside and if you don't, I am going to use force."  Plaintiff MICHAEL NEDELMAN, keeping his hands at his side, stated, "I want to stay with my wife and kids."

41.     Michael kept his hands at his side and did not make any threatening movements toward the officer or anyone else at any time.  At that point, the same OFFICER DOE stepped into Plaintiffs' home and employed a twist lock on Plaintiff MICHAEL

NEDELMAN's right arm while grabbing him by the neck.  A second OFFICER DOE then stepped in and grabbed his other arm.

42.     Plaintiff MICHAEL NEDELMAN did not resist or fight back.  Plaintiff MICHAEL NEDELMAN was forcibly dragged down the steps onto the cement walkway.  At that point, least two OFFICER DOES jumped on top of him.  Plaintiff MICHAEL NEDELMAN, still dressed in shorts and running shoes, injured his knee when he was taken down onto the concrete.

43.     Plaintiff MICHAEL NEDELMAN screamed that he was being hurt.  He was handcuffed and then searched in front of his family, Plaintiffs JILL NEDELMAN, C.E.N., B.R.N, and C.G.N., on the walkway in front of his home.   Plaintiffs JILL NEDELMAN, C.E.N., B.R.N, and C.G.N. were emotionally distraught over witnessing the police officers use force on Plaintiff MICHAEL NEDELMAN.

44.     A police car pulled into the driveway and Plaintiff MICHAEL NEDELMAN was quickly locked inside in the back seat.  He was held in the car for approximately one hour.  During this time, several OFFICER DOES came to talk to him.  However, none of the officers explained to Plaintiff MICHAEL NEDELMAN why he had been arrested, handcuffed and searched in front of his family.

45.     While he was in the car, Plaintiff MICHAEL NEDELMAN saw on the computer screen that the police had been dispatched to a house on Dumont, but that the address was not his address.

46.     During the same time period when Plaintiff MICHAEL NEDELMAN was being

dragged outside his home, several OFFICER DOES entered the house with their weapons drawn. Once inside, a female OFFICER DOE approached Plaintiff C.E.N., with a weapon drawn. Plaintiff JILL NEDELMAN said words to the effect of, "Leave my daughter alone." Plaintiff JILL NEDELMAN then passed out. The last thing she remembers is the sight of her daughter being held at gunpoint by a female OFFICER DOE.

47.     While Plaintiff MICHAEL NEDELMAN remained in the police car, he observed that his wife was taken away on a gurney and became highly concerned. An OFFICER DOE approached him and told him that his wife was going to the hospital and that she would be okay. None of the OFFICER DOES he spoke with provided Plaintiff MICHAEL NEDELMAN any other information as to his wife's condition or what had occurred in his home.

48.     Brandon Nedelman was handcuffed inside the home by the police and then taken outside.

49.     At about this time, the OFFICER DOE that had taken Plaintiff MICHAEL NEDELMAN to the ground approached him in the police car and said if he had just cooperated, this would not have happened. Plaintiff MICHAEL NEDELMAN, hoping that he might be let go, told the policeman words to the effect of that he had "no hard feelings."

50.     Several OFFICER DOES subjected Plaintiff MICHAEL NEDELMAN to a series of questions including, "Are you taking all of your medication?" To which he responded

that was not taking any. One of the OFFICER DOES also threatened Plaintiff MICHAEL NEDELMAN that he was going to be arrested and that Child Protective Services was going to take his children from him. He was eventually informed that he was going to be sent for medical tests. One of the OFFICER DOES accused him of claiming to be a "government agent" and being a "danger to self or others" and being "under a lot of stress."

51.     Plaintiff MICHAEL NEDELMAN clarified to one or more of the OFFICER DOES what he had meant by his statement about working for the government. He told them that he only meant that he was licensed and regulated by the government because he holds a mortgage broker's license. At various points he asked to be let go and to be reunited with his family. Rather than being released, he was transported to the Topanga Division police station, LAPD. Plaintiff MICHAEL NEDELMAN was in pain and was very hungry and thirsty and did not want to speak to officers at that time. He was taken to a room for evaluation and asked questions designed to determine whether he was a danger to himself or others.

52.     Plaintiff MICHAEL NEDELMAN responded appropriately to officers and asked for help for his pain, and for food and water. However, OFFICER DOES left him for an hour handcuffed to a bench without responding to his requests.

53.     A sergeant named "Ellie" asked Plaintiff MICHAEL NEDELMAN mental health questions. Plaintiff MICHAEL NEDELMAN told Sergeant "Ellie" that his civil rights were being violated. He requested to go home to be with his family and further requested

food, water and medical help.

54.     At approximately 11:00 p.m., another OFFICER DOE arrived and told him that he was taking him to Olive View because of his bizarre behavior and alleged claim that he was a "government agent."  Plaintiff MICHAEL NEDELMAN asked him if he was serious but then stopped talking because he was scared the officer was going to hurt him.

55.     OFFICER DOES did not inform Plaintiff MICHAEL NEDELMAN whether he was actually under arrest. OFFICER DOES did not read Plaintiff MICHAEL NEDELMAN his *Miranda* rights.

56.     In every interaction with police officers at the station, Plaintiff MICHAEL NEDELMAN requested food, water and medical attention.  His requests were ignored. He was eventually allowed to drink from a water fountain close to midnight.

57.     After midnight, Plaintiff MICHAEL NEDELMAN was advised that he was going to be held on a 72-hour hold at Olive View.  He was in the same clothes he had been jogging in hours earlier.

58.     When he arrived at Olive View, the staff took Plaintiff MICHAEL NEDELMAN's property and shoes and gave him slippers.  At the facility, there were some people in beds and some people lying on the floor on mats.  Plaintiff MICHAEL NEDELMAN was given a jelly sandwich and a sleeping pill.  The sleeping pill did not work because he did not sleep.  He was in a room with 15-25 people.  He was not given warm clothes and he slept on a mat with one blanket.  He was released from Olive View the next day.

59.     Plaintiff JILL NEDELMAN arrived at the Olive View facility at 12:30 or 1:00

p.m. the next day and met with a female psychiatrist, Amarjeet Rhandawa. The

psychiatrist asked Jill if she knew what happened to Plaintiff MICHAEL NEDELMAN

and why he was there. Plaintiff JILL NEDELMAN recounted the events of the previous

night. The psychiatrist stated that she was going to discharge Plaintiff MICHAEL

NEDELMAN because she did not believe that there was anything wrong with him.

60.     The evening prior, while her husband was in police custody, Plaintiff JILL

NEDELMAN was taken to the Kaiser Emergency Room in Woodland Hills where she

was diagnosed with having suffered a panic attack. One of the Emergency Medical

Technicians stated words to the effect of, "no wonder she had a panic attack, it was

inhumane how this family was treated."

61.     When Plaintiff JILL NEDELMAN was first put into an ambulance at Plaintiffs'

residence, Plaintiff C.E.N. indicated to emergency personnel that she was supposed to go

with her mother Plaintiff JILL NEDELMAN in the ambulance. Plaintiff C.E.N. entered

into the house for her shoes and the OFFICER DOES followed her into the house and

videotaped the interior of the home. Ultimately, the OFFICER DOES told C.E.N. that

she was not allowed to ride in the ambulance with her mother.

62.     After several hours, Plaintiff JILL NEDELMAN was informed at the hospital that

her two sons, Plaintiff B.R.N. and Brandon, were at the police station. Their grandmother

went to get them at the police station; however, she found them at Costco across the street

from the police station.

63.     Plaintiff B.R.N. had no contact with either parent while his mother was in the

17

hospital and his father was in police custody.  Plaintiff JILL NEDELMAN later learned

that Brandon and Plaintiff B.R.N. were in the house, without their parents, but with two

OFFICER DOES for several hours before being taken to the police station.

### FIRST CLAIM FOR RELIEF

### Violation of Civil Rights: Unlawful Detention

### (42 U.S.C. § 1983/4th and 14th Amendments)

### All Plaintiffs Against OFFICER DOES

64.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, as though set forth herein *verbatim.*

65.    This action arises under 42 U.S.C. §§ 1983 and 1988, the United States Constitution and common law principles.  The conduct of each Defendant OFFICER DOES, specifically including, but not limited to,  Defendant OFFICER DOES' detained all Plaintiffs in their home without a warrant and without reasonable suspicion that they had previously engaged in or were engaged in criminal activity.  This caused all Plaintiffs to be held captive in their home under threat of physical harm, violated the rights of Plaintiffs to be secure in their home, persons, and effects against unreasonable searches and seizures and not to be falsely imprisoned, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and entitles Plaintiffs to recover damages pursuant to 42 U.S.C. §1983.

66.    By engaging in the conduct described hereinabove, Defendant OFFICER DOES were acting or pretending to act under the color of state law as police officers employed

by Defendants LAPD and CITY.

67.     As a direct and proximate result of Defendant OFFICER DOES' wrongful conduct described hereinabove, Plaintiffs suffered injuries.

68.     Plaintiffs have suffered special and general damages as allowable under federal law in an amount to be proven at trial.  The damages are ongoing.

69.     Plaintiffs are informed, believes and based thereon alleges that, in engaging in the conduct alleged herein, Defendant OFFICER DOES: (a) acted with the intent to injure, vex, annoy and harass Plaintiffs, and (b) subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention on the part of the Defendants of thereby depriving them of their legal rights and otherwise causing Plaintiffs injury.

70.     As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against Defendant OFFICER DOES, as well as an award of reasonable attorney's fees and costs according to proof, pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

### Violation of Civil Rights: Excessive Use of Force

### (42 U.S.C. § 1983/4th Amendment)

### Plaintiffs MICHAEL NEDELMAN AND C.E.N. Against OFFICER DOES

71.     Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63 and 65 through 70, as though set forth herein *verbatim.*

72.     This action arises under 42 U.S.C. §§ 1983 and 1988, the United States Constitution and common law principles.  By engaging in the conduct described

hereinabove, specifically including, but not limited to: (1) dragging Plaintiff MICHAEL NEDELMAN out of his house and down his front steps, tackling him and jumping on top of him and (2) drawing a firearm on and pointing it at Plaintiff C.E.N., Defendant OFFICER DOES violated Plaintiffs' civil rights afforded to them under the United States Constitution, including privileges and immunities secured to Plaintiffs by the Constitution of the United States, particularly, their rights to be free from excessive and unreasonable force in violation of their rights protected under the Fourth Amendment.

73.     By engaging in the conduct described hereinabove, Defendant OFFICER DOES were acting or pretending to act under the color of state law as police officers employed by Defendants LAPD and CITY.

74.     As a direct and proximate result of Defendant OFFICER DOES' wrongful conduct described hereinabove, Plaintiffs suffered physical and emotional injuries.

75.     Plaintiffs have suffered special and general damages as allowable under federal law in an amount to be proven at trial.  These injuries and damages are ongoing.

76.     Plaintiffs are informed, believe and based thereon allege that, in engaging in the conduct alleged herein, Defendant OFFICER DOES: (a) acted with the intent to injure, vex, annoy and harass Plaintiffs, and (b) subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention on the part of the Defendants of thereby depriving them of their legal rights and otherwise causing Plaintiffs injury.

77.     As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against Defendant OFFICER DOES, as well as an award of reasonable attorney's fees

and costs according to proof, pursuant to 42 U.S.C. §1988.

## THIRD CLAIM FOR RELIEF

### Violation of Civil Rights: Unlawful Detention and Arrest

### (42 U.S.C. § 1983/4th and 14th Amendments)

### Plaintiff MICHAEL NEDELMAN Against Defendant OFFICER DOES

78.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65 through 70, and 72 through 77, as though set forth herein *verbatim.*

79.    As alleged above, the conduct of Defendant OFFICER DOES, specifically including, but not limited to, Defendant OFFICER DOES' forcibly seizing Plaintiff MICHAEL NEDELMAN, detaining him in a police car and then a police station and putting an unjustified 72-hour hold on him which caused him to be imprisoned at Olive View, violated Plaintiff MICHAEL NEDELMAN's right to be secure in his home, person and effects, against unreasonable searches and seizures, and to due process of law, as guaranteed by the U.S. Constitution and the Fourth and Fourteenth Amendments of the U.S. Constitution.

80.    As a direct and proximate result of Defendant OFFICER DOES' wrongful conduct described hereinabove, Plaintiff MICHAEL NEDELMAN suffered injuries.

81.    Plaintiff MICHAEL NEDELMAN has suffered special and general damages as allowable under federal law in an amount to be proven at trial.  These injuries and damages are ongoing.

82.    Plaintiff MICHAEL NEDELMAN is informed, believes and based thereon alleges

that, in engaging in the conduct alleged herein, Defendant OFFICER DOES: (a) acted

with the intent to injure, vex, annoy and harass Plaintiff MICHAEL NEDELMAN, and

(b) subjected Plaintiff MICHAEL NEDELMAN to cruel and unjust hardship in conscious

disregard of his rights with the intention on the part of the Defendants of thereby

depriving him of his legal rights and otherwise causing him injury.

83.    As a result of the foregoing, Plaintiff seeks exemplary and punitive damages

against Defendant OFFICER DOES, as well as an award of reasonable attorney's fees

and costs according to proof, pursuant to 42 U.S.C. §1988.

## FOURTH CLAIM FOR RELIEF

### Violation of Civil Rights: Warrantless Entry into Home

### (42 U.S.C. § 1983/4th and 14th Amendments)

### All Plaintiffs Against Defendant OFFICER DOES

84.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65

through 70, 72 through 77, and 79 through 83, as though set forth herein *verbatim.*

85.    As alleged above, the conduct of Defendant OFFICER DOES, specifically

including, but not limited to, Defendant OFFICER DOES' entering into Plaintiffs' home

without a warrant or other reasonable cause, violated Plaintiffs' rights to be secure in their

home, persons and effects, against unreasonable searches and seizures, and to due process

of law, as guaranteed by the U.S. Constitution and the Fourth and Fourteenth

Amendments of the U.S. Constitution.

86.    As a direct and proximate result of Defendant OFFICER DOES' wrongful conduct

described hereinabove, Plaintiffs suffered injuries.

87.    Plaintiffs have suffered special and general damages as allowable under federal law in an amount to be proven at trial.

88.    Plaintiffs are informed, believe and based thereon allege that, in engaging in the conduct alleged herein, Defendant OFFICER DOES: (a) acted with the intent to injure, vex, annoy and harass Plaintiffs, and (b) subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention on the part of the Defendants of thereby depriving them of their legal rights and otherwise causing Plaintiffs injury.

89.    As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against Defendant OFFICER DOES, as well as an award of reasonable attorney's fees and costs according to proof, pursuant to 42 U.S.C. §1988.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights: Substantive Due Process Rights

### (42 U.S.C. § 1983/14th Amendment)

### Plaintiffs MICHAEL and JILL NEDELMAN Against Defendant OFFICER DOES

90.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65 through 70, 72 through 77, 79 through 83, and 85 through 89, as though set forth herein *verbatim.*

91.    Plaintiffs MICHAEL and JILL NEDELMAN bring this cause of action under 42 U.S.C. § 1983, as against Defendant OFFICER DOES.

92.    The conduct of each Defendant OFFICER DOE set forth hereinabove caused

wrongful deprivations of Plaintiffs MICHAEL and JILL NEDELMANS' substantive due process rights as parents to direct the care of their children and protect their children, specifically including the rights of Plaintiffs MICHAEL and JILL NEDELMAN to provide C.E.N., B.R.N. and C.G.N. with supervision, love, comfort and reassurance as guaranteed by the Fourteenth Amendment to the United States Constitution.

93.     Defendant OFFICER DOES' wrongful conduct entitles Plaintiffs MICHAEL and JILL NEDELMAN to recover damages pursuant to 42 U.S.C. §1983.

94.     As a direct and proximate result of Defendant OFFICER DOES' wrongful conduct described hereinabove, Plaintiffs MICHAEL and JILL NEDELMAN suffered injuries.

95.     Plaintiffs MICHAEL and JILL NEDELMAN have suffered special and general damages as allowable under federal law in an amount to be proven at trial.  These injuries and damages are ongoing.

96.     Plaintiffs are informed, believe and based thereon allege that, in engaging in the conduct alleged herein, Defendant OFFICER DOES: (a) acted with the intent to injure, vex, annoy and harass Plaintiffs MICHAEL and JILL NEDELMAN, and (b) subjected Plaintiffs MICHAEL and JILL NEDELMAN to cruel and unjust hardship in conscious disregard of their rights with the intention on the part of the Defendants of thereby depriving them of their 14th Amendment rights and otherwise cause them injury.

97.     As a result of the foregoing, Plaintiffs MICHAEL and JILL NEDELMAN seek exemplary and punitive damages against Defendant OFFICER DOES, as well as an award of reasonable attorney's fees and costs according to proof, pursuant to 42 U.S.C.

24

§1988.

## SIXTH CLAIM FOR RELIEF

### *Monell* and *Canton* Claims on the 42 U.S.C. § 1983 Claims

### All Plaintiffs Against DEFENDANTS BECK, LAPD,

### CITY OF LOS ANGELES and SUPERVISORY DOES.

98.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65

through 70, 72 through 77, 79 through 83, 85 through 89, and 91 through 97, as though

set forth herein *verbatim.*

99.    Plaintiffs bring this cause of action under 42 U.S.C. § 1983, as against

DEFENDANTS BECK, LAPD, CITY and SUPERVISORY DOES. ("MUNICIPAL

DEFENDANTS").

100.    The actions and omissions of Defendant OFFICER DOES alleged above were a

direct and proximate cause of the constitutional injuries suffered by Plaintiffs.

101.    Defendant OFFICER DOES's violations of Plaintiffs' rights to be free from: (1)

unlawful detention; (2) excessive use of force; (3) unlawful detention and arrest; (4)

warrantless entry; and (5) violations of Fourteenth Amendment substantive due process

rights as a parent, as set forth herein, were the direct and proximate results of

MUNICIPAL DEFENDANTS' tolerating and maintaining longstanding customs,

policies, practices and/or procedures, set forth herein below.

102.    These longstanding customs, policies, practices and/or procedures, include, but are

not limited to, Defendants' standard operating procedures.

103.   MUNICIPAL DEFENDANTS' customs, policies, practices and/or procedures create and allow for, *inter alia*, an ongoing pattern by all Defendants of condoning and having a deliberate indifference towards citizens' constitutional rights, specifically in connection with Defendant OFFICER DOES' violations of Plaintiffs' rights to be free from: (1) unlawful detention; (2) excessive use of force; (3) unlawful detention and arrest; (4) warrantless entry; and (5) violations of Fourteenth Amendment substantive due process rights as a parent.

104.   MUNICIPAL DEFENDANTS' customs, policies, practices and/or procedures create and allow for, *inter alia*, a failure by MUNICIPAL DEFENDANTS to adequately train, supervise, discipline, screen and hire police officers in connection with citizens' constitutional rights relating to: (1) unlawful detention; (2) excessive use of force; (3) unlawful detention and arrest; (4) warrantless entry; and (5) Fourteenth Amendment substantive due process rights as a parent, so as to cause Defendant OFFICER DOES' violations of those rights.

105.   The policy maker for the officers of Defendants LAPD and CITY at the time of the incident was Defendant BECK. As policy maker, Defendant BECK had the duty to make and maintain customs, policies, practices and/or procedures which address and cure the problems of as well as provide adequate training, supervision, discipline, screening and hiring of police officers to prevent against the problems of:  (1) unlawful detention; (2) excessive use of force; (3) unlawful detention and arrest; (4) warrantless entry; and (5) violations of Fourteenth Amendment substantive due process rights as a parent.  Rather

26

than making and maintaining these customs, policies, practices and/or procedures,

Defendant BECK created an unreasonable risk of harm to Plaintiffs by having a

deliberate indifference toward those constitutional rights.

106.    The above described customs, policies, practices and/or procedures demonstrate a

deliberate indifference on the part of the policy makers of MUNICIPAL DEFENDANTS

to the constitutional rights of persons within the City of Los Angeles and were the cause

of the violations of Plaintiffs' rights alleged herein.

107.    MUNICIPAL DEFENDANTS expressly or tacitly encouraged, ratified, condoned

and/or approved of the acts and/or omissions of Defendant OFFICER DOES alleged

herein, and knew that such conduct was unjustified and would result in violations of

Plaintiffs' constitutional rights.

108.    As a direct and proximate result of MUNICIPAL DEFENDANTS' wrongful

conduct alleged herein and above, Plaintiffs were subjected to injuries and are therefore

entitled to recover damages.  Plaintiffs also seek attorneys' fees and costs against

MUNICIPAL DEFENDANTS.

**SEVENTH CLAIM FOR RELIEF**

**California Civil Code § 52.1**

**All Plaintiffs Against All Defendants and DOES**

109.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65

through 70, 72 through 77, 79 through 83, 85 through 89, 91 through 97, and 99 through

108, as though set forth herein *verbatim*.

110.   All Defendants' actions and omissions alleged above constitutes an interference by threats, intimidation, or coercion with the exercise or enjoyment by Plaintiffs of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state pursuant to *California Civil Code* § 52.1.  These rights specifically include, but are not limited to, their rights to be free from:    (1) unlawful detention; (2) excessive use of force; (3) unlawful detention and arrest; (4) warrantless entry; and (5) violations of Fourteenth Amendment substantive due process rights as a parent.  These rights are guaranteed by the Constitution and laws of the State of California, including Article I, § 1, 13 of the California Constitution, and also the Fourth and Fourteenth Amendments of the United States Constitution.

111.   As a direct and proximate cause of the aforementioned actions of Defendants, Plaintiffs were injured as set forth above, thereby entitling Plaintiffs to damages against Defendants under *California Civil Code* § 52.1, including but not limited to actual damages, exemplary damages, civil penalties, and attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### All Plaintiffs Against All Defendants and DOES

112.   Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65 through 70, 72 through 77, 79 through 83, 85 through 89, 91 through 97, 99 through 108, and 110 through 111, as though set forth herein *verbatim.*

113.   Plaintiffs are informed, believe and based thereon allege that each Defendant

OFFICER DOE negligently inflicted emotional distress on Plaintiff MICHAEL

NEDELMAN by, *inter alia*, striking, using force upon, harming and injuring him and in

doing or failing to do the other wrongful acts herein and above alleged.

114.    Plaintiffs are informed, believe and based thereon allege that each Defendant

OFFICER DOE negligently inflicted emotional distress on Plaintiff C.E.N. by drawing a

weapon on her as well as by harming and injuring her mother and father in front of her

and in doing or failing to do the other wrongful acts herein and above alleged.

115.    Plaintiffs are informed, believe and based thereon allege that each Defendant

OFFICER DOE negligently inflicted emotional distress on Plaintiff JILL NEDELMAN,

and Plaintiffs C.E.N., B.R.N., AND C.G.N., by, *inter alia*, using excessive force on

Plaintiff MICHAEL NEDELMAN within the view of his wife and children and in doing

or failing to do the other wrongful acts herein and above alleged.

116.    Plaintiffs are informed, believe and based thereon allege that each Defendant

OFFICER DOE negligently inflicted emotional distress on Plaintiffs C.E.N., B.R.N.,

AND C.G.N., by, *inter alia*, separating them from their parents and taking their parents

away in front of them and in doing or failing to do the other wrongful acts herein and

above alleged.

117.    As a direct and proximate result of the aforementioned concurrent and

simultaneous negligent conduct of Defendant OFFICER DOES, and each of them,

Plaintiffs suffered serious emotional distress and the exacerbation of emotional distress.

118.    The negligence of Defendant OFFICER DOES, and each of them, was a

substantial factor in causing or exacerbating the serious emotional distress of Plaintiffs causing each of them to incur special and general damages in an amount to be proved at the time of trial.

119.    MUNICIPAL DEFENDANTS, and each of them, which employed Defendant OFFICER DOES, are vicariously liable under principles of respondeat superior and the California Government Code § 815.2, for the acts and omissions of Defendant OFFICER DOES, and said entity defendants are jointly and severally liable for Plaintiffs' special and general damages.

## NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### All Plaintiffs Against All Defendants and DOES

120.    Plaintiffs incorporate by reference and reallege Paragraphs 1 through 63, 65 through 70, 72 through 77, 79 through 83, 85 through 89, 91 through 97, 99 through 108, 110 through 111, and 113 through 119, as though set forth herein *verbatim.*

121.    The conduct of Defendant OFFICER DOES, and each of them, alleged herein and above, including but not limited to: (1) striking, using force upon, harming and injuring Plaintiff MICHAEL NEDELMAN; (2) drawing a weapon on Plaintiff C.E.N. as well as harming and injuring her mother and father in front of her; (3) using excessive force on Plaintiff MICHAEL NEDELMAN within the view of his wife and children; (2) and separating Plaintiffs C.E.N., B.R.N., AND C.G.N. from their parents and taking their parents away in front of them, was outrageous conduct that exceeded reason and the

bounds of conduct usually tolerated in this society.

122.    Defendant OFFICER DOES, and each of them, in engaging in the aforementioned conduct, intended to cause Plaintiffs emotional distress and/or acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress or an exacerbation of emotional distress, knowing that Plaintiffs were all present when the conduct occurred.

123.    The conduct of Defendant OFFICER DOES, and each of them, was the direct and proximate cause of Plaintiff MICHAEL NEDELMAN's physical injuries, and were a substantial factor in exacerbating or causing Plaintiffs MICHAEL NEDELMAN, JILL NEDELMAN, C.E.N., B.R.N., and C.G.N. to suffer and to continue to suffer from severe emotional distress, mental pain, anguish, embarrassment, humiliation and psychological disturbance.

124.    Plaintiffs have suffered special and general damages as a result of the emotional distress, mental pain, anguish, embarrassment, humiliation and psychological disturbance in an amount according to proof at trial in excess of this Court's jurisdiction.

125.    MUNICIPAL DEFENDANTS, and each of them, which employed Defendant OFFICER DOES, are vicariously liable under principles of respondeat superior and the California Government Code § 815.2, for the acts and omissions of Defendant OFFICER DOES, and said entity defendants are jointly and severally liable for Plaintiffs' special and general damages.

126.    The aforementioned acts of Defendant OFFICER DOES, and each of them, were

despicable and subjected Plaintiffs to cruel and unjust hardship, and indicate Defendant

OFFICER DOES' intent to cause injury to all Plaintiffs as well as their conscious

disregard for the rights and safety of all Plaintiffs, and tend to show that the actions were

willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and

punitive damages as to said individual Defendants.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, on

each and every cause of action as follows:

1.    For declaratory and injunctive relief preventing similar future harm;

2.    For general damages according to proof at trial;

3.    For special damages according to proof at trial;

4.    For an award of punitive damages against Defendant OFFICER DOES;

5.    For attorney's fees and costs under 42 U.S.C. § 1988, Civil Code §§ 52(b)(3),

      52.1(h); C.C.P. § 1021.5, or under any other applicable statutes or law;

6.    For an award of Plaintiffs' costs of suit incurred herein;

7.    For an award of any applicable statutory penalties;

8.    For an award of any applicable interest amounts; and

/ / /

/ / /

/ / /

/ / /

9.    For any other relief the Court deems appropriate.

Dated: February 15, 2012         LAW OFFICES OF BRIAN A. VOGEL, PC

                                 By: _____
                                     BRIAN A. VOGEL
                                     Attorney for MICHAEL NEDELMAN, an
                                     individual, JILL NEDELMAN, an individual,
                                     and JILL NEDELMAN as guardian ad litem for
                                     C.E.N., a minor,  B.R.N., a minor,  and C.G.N.,
                                     a minor

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: February 15, 2012         LAW OFFICES OF BRIAN A. VOGEL, PC

                                 By: _____
                                     BRIAN A. VOGEL
                                     Attorney for MICHAEL NEDELMAN, an
                                     individual, and JILL NEDELMAN, an
                                     individual, and JILL NEDELMAN as guardian
                                     ad litem for C.E.N., a minor,  B.R.N., a minor,
                                     and C.G.N., a minor

33

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □)<br>MICHAEL NEDELMAN, an individual, JILL NEDELMAN, an individual,<br>C.E.N., B.R.N., and C.G.N., MINORS, BY AND THROUGH THEIR<br>GUARDIAN AD LITEM AND MOTHER , JILL NEDELMAN | DEFENDANTS<br>THE CITY OF LOS ANGELES, THE LOS ANGELES POLICE<br>DEPARTMENT, CHIEF CHARLIE BECK, an individual, and DOES 1-10,<br>inclusive. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br><br>Brian A. Vogel, The Law Offices of Brian A. Vogel, PC<br>770 County Square Dr., Suite 104, Ventura, CA 93003<br>(805) 654-0400 | Attorneys (If Known) |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S.<br>                                  Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship<br>                                  of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country ☐ 3 | | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1 Original<br>Proceeding    ☐ 2 Removed from<br>State Court    ☐ 3 Remanded from<br>Appellate Court    ☐ 4 Reinstated or<br>Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-<br>District<br>Litigation    ☐ 7 Appeal to District<br>Judge from<br>Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No      ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

1983 Violation of Civil Rights

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY / PERSONAL INJURY | PERSONAL INJURY / PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending |      Vacate Sentence |      Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act |      Liability | ☐ 380 Other Personal |      Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & |      Property Damage | ☐ 530 General |      Relations |
|      Rates/etc. | ☐ 150 Recovery of |      Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation |      Overpayment & | ☐ 330 Fed. Employers' |      Product Liability | ☐ 540 Mandamus/ |      Reporting & |
| ☐ 470 Racketeer Influenced |      Enforcement of |      Liability | BANKRUPTCY |      Other |      Disclosure Act |
|      and Corrupt |      Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
|      Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product |      158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted |      Liability | ☐ 423 Withdrawal 28 | FORFEITURE / PENALTY |      Litigation |
| ☐ 490 Cable/Sat TV |      Student Loan (Excl. | ☐ 350 Motor Vehicle |      USC 157 | ☐ 610 Agriculture | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service |      Veterans) | ☐ 355 Motor Vehicle | CIVIL RIGHTS | ☐ 620 Other Food & |      Security Act |
| ☐ 850 Securities/Commodities/ | ☐ 153 Recovery of |      Product Liability | ☐ 441 Voting |      Drug | PROPERTY RIGHTS |
|      Exchange |      Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | ☐ 625 Drug Related | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 |      Veteran's Benefits |      Injury | ☐ 443 Housing/Acco- |      Seizure of | ☐ 830 Patent |
|      USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- |      mmodations |      Property 21 USC | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract |      Med Malpractice | ☐ 444 Welfare |      881 | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization |      Liability |      Product Liability |      Disabilities - | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
|      Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal |      Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY |      Injury Product | ☐ 446 American with | ☐ 660 Occupational |      (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation |      Liability |      Disabilities - |      Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION |      Other | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | ☒ 440 Other Civil | | FEDERAL TAX SUITS |
|      nation Under Equal | ☐ 240 Torts to Land |      Application |      Rights | | ☐ 870 Taxes (U.S. Plaintiff |
|      Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | | |      or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property |      Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
|      State Statutes | | ☐ 465 Other Immigration | | |      USC 7609 |
| | |      Actions | | | |

# CV 12 1385

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case?  ☐ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX.  VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LA County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| The City of Los Angeles--Los Angeles; The Los Angeles Police Department--Los Angeles; Chief Charlie Beck--unknown; Does 1-10--unknown | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LA County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Bruan Vogel_    Date  _2-15-12_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |